Collins v. Park.

CASE 3—PETITION EQUITY—MARCH 10.

# Collins v. Park.

APPEAL FROM ESTILL COURT OF COMMON PLEAS.

1. VENUE OF ACTION- FOR SPECIFIC EXECUTION OF CONTRACT FOR SALE OF LAND.—An action by the vendor to enforce specific execution of a contract for the sale of land and for enforcement of his lien for the purchase money must be brought in the county in which the land is situated, and that court, having jurisdiction for the purpose of enforcing the contract, has jurisdiction also to render a personal judgment for the purchase money, although the defendant is not a resident of and has not been summoned in the county.

2. IN AN ACTION BY THE VENDOR TO ENFORCE SPECIFIC EXECUTION OF A CONTRACT FOR THE SALE OF LAND, the defendant can not demand an exhibition of the plaintiff's title, unless he either alleges an entire want of title or points out the particular defects of which he complains.

3. SAME—REASONABLE TIME TO CURE DEFECTS IN TITLE.— If the vendor is able to convey a good title at the time the contract is to be performed and tenders a deed, the contract will be enforced, although his title was defective at date of sale. And the chancellor should permit a vendor, even after he commences his action, to supply defects in his title so as to comply with his contract, if he can do so within a reasonable time, provided time is not of the essence of the contract.

4. WHERE NO TIME IS FIXED IN THE CONTRACT FOR THE VENDOR TO MAKE THE CONVEYANCE it will be treated as an undertaking by him to do so within a reasonable time.

In the contract in this case, executed March 6, 1890, there is a provision that the purchaser is to have a reasonable time to examine the title, following which is this clause: "The parties of the first part are to be allowed to retain possession of the house and to feed their stock on the lands until June 1, 1890; with these exceptions the party of the second part is to have possession when the deed is made." It had been provided in a previous part of the contract that the first payment was not to be made until execution and delivery of the deed. *Held*—That it is a fair inference that the parties to the contract contemplated June 1, 1890, as a time on or before which a good title might be made and tendered.

5. IMMATERIAL DEFECT IN TITLE.—Although at the time when the vendor should have performed the contract he had no deed to a part of the land, yet as he had been previously adjudged entitled to such conveyance, and it only remained for an officer of the court to perform a mere ministerial act, there was no such defect of title as should nullify the contract.

Collins v. Park.

6. POWER OF LEGISLATURE TO REMOVE DISABILITY.—Under the old Constitution the Legislature had the power, by special act, to relieve a married woman of the disability of infancy so as to authorize her to unite with her husband in a deed to land for the purpose of relinquishing her dower.

JOHN BENNETT, CROOKE & COBB, SMITH & MOBERLEY, FOR APPELLANT.

1. The action is transitory and not local, and the Estill Court of Common Pleas did not acquire jurisdiction of the case by service of summons in Madison county. (Civil Code, sec. 78; Parish v. Oldham, 3 J. J. Mar., 544; Kendrick v. Wheatley, 3 Dana, 34; Mason v. Church, 4 J. J. Mar., 407; Page & Wife v. McKee, &c., 3 Bush, 135.)
2. The answer sets up such facts as show that time was of the essence of the contract, and appellant should have been permitted to make the defense.
3. When one seeks a specific performance he must show ability to execute and that the contract can be fairly and availably executed on his part (May v. Fenton, 7 J. J. Mar., 310); and the complainant must show that in the transaction he has been guilty of no misrepresentation or concealment. (Madison v. Chinn, 3 J. J. M., 231.)

    He must show himself without default. (Campbell v. Harris, 3 Litt., 293; Pomeroy's Eq. Jur., secs. 889, 905, 1405, note.)
4. Under the contract appellant was to be the judge of the title, and if, after examination of the title, he was not satisfied, then he was not to be bound. (Everett v. Lipscomb, 76 Va., 404.)

WM. LINDSAY, ROBERT RIDDELL, HUGH RIDDELL, FOR APPELLEES.

1. As appellees sought to enforce a lien on land their action was local and not transitory, and the Estill court had jurisdiction. (Ducker & Jones v. Gray, 3 J. J. M., 163; Kendrick v. Wheatley, 3 Dana, 34; Honore v. Colmesnil, 4 Dana, 291.)
2. The answer was not good for lack of certainty. It stated merely the conclusions of the pleader. The *facts* should have been clearly stated. (Tye v. Catchings 78 Ky., 465.)
3. A party alleging a defect of title must show such a defect as entitles him to justification in refusing to accept the deed. (Dwight v. Cutter, 64 Am. Dec., 110; Waterman on Specific Execution of Contract, sec. 419.)
4. The Legislature had the power under the old Constitution to enable an infant married woman to convey her right of dower. (Commonwealth v. Whipps, 80 Ky., 259; sec. 32 of art. 2, Constitution, 1850; sec. 1, Bill of Rights, Constitution, 1850; sec. 59, par. 7, present Constitution.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

March 1, 1890, the following contract was made : "This writing, between J. M. Park and W. F. Park of first part, and J. S. Collins of second part, witnesseth : That first parties have sold to second party the Harry Moore farm, just east of Irvine, in county of Estill, containing 450 acres, more or less, together with all improvements thereon, for the consideration of $30,000, one dollar cash in hand paid, the receipt of which is hereby acknowledged; ·one-half the remainder when the deed is made, the balance in equal annual installments of one and two years, together with six per cent. interest, and a lien retained, and agree to make him a deed in fee-simple, with general warranty thereof, the purchaser to have a reasonable time to examine the title. The parties of first part are to be allowed to retain possession of the house and to feed their stock on the lands until June 1, 1890; with these exceptions the party of second part is to have possession when the deed is made. It is understood that first parties have heretofore made contract with R. N. I. & B. Railroad Company, for the right of way, which is hereby transferred to second party and is to be assumed by him, parties of first part to be released from all liability therefor."

July 7, 1890, the vendors instituted this action in Estill Circuit Court, praying judgment for specific execution of the contract: for $15,000 with interest from June 1, 1890, until paid, subject to credit of $2,000 as of July 4, 1890, and for enforcement of their lien by sale of the land to pay their debt. It was stated in the petition that plaintiffs had a good title to the land, and

Collins v. Park.

before commencing the action they had duly executed, acknowledged and tendered to defendant a deed therefor and also possession, neither of which he accepted. Filed with, and as part of the petition, were, in addition to the deed from plaintiffs to defendant, copies of deeds made to the plaintiffs by their immediate vendors, whose title to one parcel of the land was, however, conveyed by commissioner of court.

At December term of court defendant appeared and filed both a general demurrer to the petition and demurrer to jurisdiction of the court, both of which were overruled. He then filed answer, a demurrer to all of which was sustained, except paragraph six, wherein it was alleged that at time of the contract the wife of the plaintiff, W. F. Park, was under age and had not nor could relinquish her dower right in the land.

At the same time an amended answer was offered, but neither it nor an answer tendered at June term, 1891, to amended petition of plaintiffs was permitted to be filed. And at that term the action was submitted and judgment rendered for execution of the contract sued on: that plaintiffs have a lien on the land for the sum of $15,000 and interest from June 1, 1891, subject to a credit of $2,000, as of July 4, 1890, also for the two deferred payments of $7,500, each, and interest, and that so much of the land as necessary to satisfy the first-mentioned sum, for which personal judgment was then rendered, be sold for that purpose, it being recited that the land was susceptible of division.

The various grounds of defense made by demurrer and answers will be referred to and considered in order.

Collins v. Park.

(1.) Sub-section 3, section 62, Civil, Code, provides that actions for the sale of real property under a mortgage, lien, or other incumbrance or charge, except for debt of a decedent, must be brought in the county in which the subject of the action, or some part thereof, is situated. Therefore, as the land subject of the action is situated in Estill county, no other than the Estill Circuit Court could have rendered judgment for sale of it under lien for purchase money, as prayed for in the petition. And having exclusive jurisdiction for that purpose, which, however, could not be intelligibly or equitably exercised without affording the defendant an opportunity to be heard, it would seem to follow the court did have jurisdiction to render personal judgment for the amount of purchase money found due, notwithstanding he was not a resident of nor summoned in Estill County. And, we think, section 376 was intended to apply to such case as this. It is as follows : "In an action to enforce a mortgage or other lien judgment may be rendered for sale of the property and for recovery of the debt against the defendant personally."

It is true section 78 provides that an action, not required by previous sections to be brought in some other county, may be brought in any county in which the defendant in the action resides or is summoned ; and that section 79 in substance provides that no judgment shall be rendered against a defendant in such actions, unless it is so brought. But those sections apply to a transitory action, the cause of which is distinct and not necessarily connected with any other subject or cause of action, and do not conflict with section 376, which authorizes, without qualification, a personal judgment against a

defendant in every action to enforce a mortgage or other lien by sale of property to satisfy the debt, the section not however applying, of course, to non-resident defendants.

In our opinion the court had jurisdiction to render a personal judgment as well as to enforce performance of the contract, and the demurrer was properly overruled.

(2.) It appears that the land sold, described in the contract as the Harry Moore farm, was under judgment of court in an action to settle the estate of Moore, the original owner, divided and sold in two parcels—one of them comprising 250 acres, purchased by J. A. Harris, and the other, 183 acres, purchased by the plaintiffs. Harris had received a commissioner's deed and sold and conveyed the parcel of 250 acres to plaintiffs prior to the sale to defendant. But though the sale of the other parcel of 183 acres to plaintiffs had been made and confirmed by the court and deed ordered previous to March 1, 1890, date of the contract, it was not executed by the commissioner of court until June 3, 1890.

It is stated in general terms in the answers that all the land sold is not included in the deed from plaintiffs to defendant; but neither the quantity lacking, nor any particular alteration in the boundary, is indicated; nor are any particular defects in their title pointed out, except in respect to authentication of the deed from Harris and wife to plaintiffs, and the inability of the wife of one of the plaintiffs to relinquish her dower right as alleged in paragraph 6 of the answer. Consequently, as well settled by this court, the demurrer to the answer was properly sustained; for, as said in Logan v. Bull, 78 Ky., 607, " In order to entitle a vendee to demand an exhibition of

the vendor's title, he must allege either an entire want of title, or point out the particular defects of which he complains."

The deed of Harris and wife was executed and acknowledged in Kansas, where they resided, and the certificate of execution and acknowledgment appears to have been made in the manner required by the General Statutes. We perceive no defect in it whatever.

It is admitted that the wife of one of the plaintiffs, Kate Park, was only nineteen years of age at date of their sale to defendant, and she was consequently, then, incapable of relinquishing her dower right. But it appears that April 29, 1890, an act was passed by the General Assembly whereby she was so far relieved of all disability of infancy as to authorize and empower her to unite with her husband in conveying the land in question, as though she was a married woman over twenty-one years of age.

If that act was valid, no obstacle to her fully relinquishing her dower right in the land thereafter existed, and the deed to defendant, in which she joined, was as valid as if she had been over twenty-one years of age. We do not perceive upon what ground it can be held invalid; on the contrary, according to repeated decisions of this court, it was valid and effectual under the old Constitution, in operation when it was passed.

The rule, as settled by this court, is, that if the vendor is able to convey a good title at the time the contract is to be performed, and tenders a deed, the contract will be enforced, although his title was defective at date of sale. Logan v. Bull. And we see no reason why the chancellor should not permit a vendor, even after he commences

his action, to supply defects in his title so as to comply with his contract, if he can do so within a reasonable time, provided time is not of the essence of the contract; and such seems to have been the doctrine of the case of Dresel v. Jordan, 104 Mass., 407 cited with approval in Logan v. Bull. No time is fixed in the contract in question for plaintiffs to make the conveyance, and, therefore, it must be treated as an undertaking by them to do so within a reasonable time.

What, then, according to the contract, was a reasonable time? Following a provision in the contract that the purchaser was to have a reasonable time to examine the title, is this clause: " The parties of the first part are to be allowed to retain possession of the house and to feed their stock on the lands until June 1, 1890; with these exceptions, *the party of the second part is to have possession when the deed is made.*" It had been in a previous part of the contract provided that the first payment of $15,000 was not to be made until execution and delivery of the deed; hence, the stipulation that possession was to be given prior to June 1, in case the deed was made, and, as a consequence the first payment became due before that time. It therefore seems to us a fair inference that the parties to the contract contemplated June 1, 1890, as a time on or before which a good title might be made and tendered in compliance of the vendor's undertaking. There does not seem to us any defect of title existed on that day, except the commissioner of court had not then, nor did until June 3, 1890, execute the deed to plaintiffs. But in view of the fact they had been previously adjudged entitled to such conveyance, and it only awaited performance of a mere ministerial act by an officer of court, it

would be extremely technical and unreasonable to decide such a defect of title existed on that account as should avoid and nullify the entire contract.

In our opinion plaintiffs, within a reasonable time, did have and convey to defendant a good title to the land; and, consequently, it is not necessary to consider the matters pleaded by defendant in avoidance of the contract, or as cause of counter claim by reason of plaintiffs' alleged failure to make and tender conveyance of a good title within the time they undertook to do so.

Judgment affirmed.